UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE GARRETT, | No. 1:20-cv-01204-GSA |
| Plaintiff, | |
| v. | **ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |
| KILOLO KIJAKAZI, acting Commissioner of Social Security, | |
| Defendant. | **(Doc. 22, 26)** |

## I.      Introduction

Plaintiff Michelle Garrett ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act.  The matter is before the Court on the parties' briefs which were submitted without oral argument to the United States Magistrate Judge.[1]  Docs. 22, 26.  After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision.  Plaintiff's appeal is therefore denied.

## II.      Factual and Procedural Background[2]

On March 3, 2017 Plaintiff applied for disability insurance benefits alleging a disability onset date of June 30, 2016.  The Commissioner denied the application initially on May 31, 2017 and on reconsideration on August 24, 2017.  AR 118, 123.  Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on September 16, 2019.  AR 35–77.  On October 1, 2019 the ALJ issued a decision denying Plaintiff's application.  AR 12–34.  The Appeals Council denied review on June 24, 2020.  AR 1–6.  On August 26, 2020 Plaintiff filed a complaint

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  *See* Docs. 7 and 9.

[2] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, which will not be exhaustively summarized.  Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

in this Court.  Doc. 1.

### III.   <u>The Disability Standard</u>

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.   "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-

2

(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff  bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## IV.    The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of June 30, 2016.  AR 17.  At step two the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, chondromalacia of the right knee status post repair of a torn meniscus, and chronic pain syndrome.  AR 17–18.  The ALJ also determined at step two that Plaintiff had the following non-severe impairments: obesity, major depressive disorder, and anxiety disorder.  AR 18.  At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 20–21.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) with the following limitations: stand/walk 30 minutes consecutively and 4 hours in a day with 2-3 minutes off task to rest after each 30 minutes of standing/walking; sit for 1 hour consecutively and 6 hours in a day with the ability to shift positions or stand up for 5 minutes every hour at her work station while remaining on task during those 5 minutes; occasionally climb; frequently stoop, kneel, crouch, or crawl; may be off task up to 9 percent of a workday but would not consistently be off

3

task 9 percent of every workday.  AR 21.

At step four the ALJ concluded that Plaintiff could perform her past relevant work as a salon manager and file clerk.  AR 24–25.  Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since her alleged disability onset date of June 30, 2016.  AR 25.

**V.**   **Issues Presented**

Plaintiff asserts four claims of error: 1) that the ALJ erred in according inadequate weight to the consultative examining opinion of Dr. Rush; 2) that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony as to the degree of her pain; 3) that the ALJ erred in relying on the VE's testimony which conflicted with the DOT; and 4) the ALJ erred in failing to pose a complete hypothetical to the VE.

**A.**   **Dr. Rush's Opinion**

**1.**   **Applicable Law**

Before proceeding to step four the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  *Robbins,* 466 F.3d at 883.  *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the

4

facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed before March 27, 2017, the regulations provide that more weight is generally given to the opinion of treating physicians, which are given controlling weight when well supported by clinical evidence and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) (noting that the opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations).

An ALJ may reject an uncontradicted opinion of a treating or examining physician only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining physician may be rejected for "specific and legitimate" reasons. *Id.* at 830. In either case, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Regardless of source, all medical opinions that are not given controlling weight are evaluated using the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization. 20 C.F.R. § 404.1527(c). The opinion of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

## 2.   **Analysis**

On May 22, 2019 Dr. Rush performed a consultative physical examination at the request of the agency. AR 670–74. Most notably, Dr. Rush identified a diagnosis of "status post chondromalacia and torn meniscus of right knee with poor result from surgery resulting in negative

1
2
3
4

range of motion with persistent pain." AR 674.  Dr. Rush opined that the claimant was limited to light exertion, could walk and stand for one to two hours with rest periods, occasionally bend, and never kneel, stoop, crawl, crouch, walk on uneven terrain, or climb ladders.  AR 674.[3]

5
6
7
8
9
10
11
12
13
14

The ALJ gave the opinion partial weight and agreed only with the limitation to light exertion.  AR 24.  However, the ALJ disagreed with the remainder of the opinion.  The relevant factors the ALJ identified were: 1) full motor strength throughout Dr. Rush's examination (citing Ex. 10F/4); 2) observations of treating sources who generally noted that the claimant had full strength and intact reflexes (citing Ex. 19F/13, 29, 36, 43, 50, 55, 61, 64, 75, 79, 82, 89, 92, 95); 3) observations of examining sources who generally noted that the claimant had a gait within normal limits (citing Ex. 5F/4, 8, 13; 6F/10, 64; 7F/64, 70, 83, 89; 14F/5-105; 18F/6; and 19F/13); and,  4) observations of examining sources who noted that the claimant had a full range of motion during many examinations (citing Ex. lF/5; 3F/4; 8F/l l; l0F/4; 19F/13, 28, 36, 43, 50, 55, 61, 75).

15
16
17
18
19
20
21
22
23
24

Plaintiff disputes the accuracy and sufficiency of the ALJ's discussion, arguing: 1) the ALJ did not consider the portions of Dr. Rush's exam noting abnormal knee ROM and abnormal gate; 2) some of the ALJ's cited records showing full motor strength were outside the relevant period and also showed knee tenderness; 4) the ALJ overlooked records showing decreased strength on flexion and extension of the right knee; 5) some of the ALJ's cited records concerning full ROM were outside the relevant period and showed knee tenderness; 6) regarding normal gate, most of the physical exams the ALJ cites note that Plaintiff actually had an abnormal gait; 7) those same exams show inability to heel and toe walk, right knee effusion, decrease right knee strength,

25
26
27
28

[3] Dr. Rush identified these limitations in narrative form at the end of his examination notes.  Dr. Rush also completed a check-box RFC form on the same day, attached thereto, in which he identified different limitations in multiple respects.  Standing was limited to 7 hours in a day and 7 hours consecutively, not 1 to 2 hours.  Stooping was limited to frequent, not occasional.  Kneeling and crouching were limited to occasional, not never.  AR 676, 678.  Importantly, the check-box form is not in issue because the ALJ did not discuss that form, nor did the ALJ discuss the inconsistencies between the two forms.

symptoms reproduced by patella compression, bad patella tracking, positive Babinski sign, positive Lackman sign, positive drawer sign, positive McMurray sign, decreased range of motion and pain with range of motion; 8) other exams the ALJ cites document appreciable effusion, decreased strength, decreased right knee range of motion, tenderness, pain, and pain with range of motion testing; 9) three exams reflect both normal and abnormal gate in the same exam; 10) The ALJ also cites to three provider visits where it appears a physical exam was not conducted, or was limited because it was a telemedicine visit, nurse visit, or pill count visit; 11) another visit was with a psychiatrist who stated that Ms. Garrett's "gait and station appear normal, but this is a psychiatric exam." and 12) the ALJ only cites to one normal physical exam without any positive findings regarding Ms. Garrett's knees or low back.  Br. at 11-13, Doc. 22.

Plaintiff ultimately concludes as follows:  that "The ALJ failed to discuss conflicting clinical evidence in his evaluation of Dr. Rush's opinion.  This is improper. The ALJ is required to provide a detailed and thorough summary of the facts – including conflicting clinical evidence – that explains the ALJ's interpretation of the information."  Br. at 14 (emphasis added).

To the contrary, the ALJ did discuss and extensively cite conflicting clinical evidence.  She simply did so 2 pages prior to her discussion of Dr. Rush's opinion, and Plaintiff focuses on the latter discussion while ignoring the former.[4]  The ALJ explained as follows:

> Throughout the relevant period, the claimant consistently reported pain arising, at least in part, out of her right knee injury, degenerative disc disease, and chronic pain syndrome (Exhibits lF/2, 17; 3F/l; 4F/1 l; 5F/3, 7, 12; 6F/8, 13; 7F/35, 61, 67, 80, 86, 92; 8F/8; l lF/28; 14F/4-108; and 19F/13-95). However, the claimant's allegation of constant chronic pain are out of proportion to her typically unremarkable presentation during appointments. For example, providers frequently observed the claimant as being in no acute or apparent distress when evaluated(Exhibits lF/8, 19;

---

[4] The RFC analysis was three pages in length. The ALJ did not need to repeat every description and citation again when discussing Dr. Rush's opinion insofar as the previous discussion explained the ALJ's affirmative reasoning for reaching the RFC. Reasoning equally applicable to the rejection of Dr. Rush's contrary opinion. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion . . . if those inferences are to be drawn.).

4F/12; 7F/10, 20, 51; l0F/2; llF/4, 10, 15, 20, 26, 32; 14F/5, 7, 9; and 19F/13-95). Additionally, muscle atrophy is a common side effect of prolonged or chronic pain, as it is common to not use a muscle in order to avoid pain. The claimant generally had no evidence of muscle atrophy during the relevant period (See e.g. Exhibits 1F-19F). For example, she generally had normal strength in her upper and lower extremities and intact reflexes

(Exhibits l0F/4 and 19F/13, 29, 36, 43, 50, 55, 61, 64, 75, 79, 82, 89, 92, 95). *At times, the claimant presented with a diminished range of motion and strength* (Exhibits 5F/4,  8, 14; 6F/10, 16; 7F/64, 70, 83, 89, 94; l0F/4; and 14F/12-109). However, the claimant was noted as having a full range of motion during many examinations (Exhibits lF/5; 3F/4; 8F/l l;  l0F/4; and 19F/13, 28, 36, 43, 50, 55, 61, 75). *Additionally, the claimant occasionally presented with spasms, tenderness, and swelling in her knee and spine* (Exhibits lF/8, 19; 4F/12; 6F/10;  7F/15, 25, 64, 70, 83, 89; 1 lF/10; 14F/49-109; and 19F/29). However, the claimant was noted as having no swelling and normal musculoskeletal examinations during many treatment sessions (Exhibits lF/5; 3F/4; 6F/5, 10, 16; 7F/30, 44, 51, 64, 83, 89; and 8F/l l). *Although the claimant had positive McMurray tests*, the claimant showed improvement with treatment (Exhibit 14F/49- 1 09). Indeed, with treatment, the claimant generally had negative McMurray tests (Exhibits 4F/12 and 14F/12-46). Furthermore, the claimant's straight leg raise test was negative (Exhibit l0F/4). *Although the claimant was occasionally observed with a limp*, examining sources generally noted that the claimant had a gait within normal limits without an assistive device (Exhibits 5F/4, 8, 13; 6F/10, 64; 7F/64, 70, 83, 89; 14F/5-105; 18F/6; and 19F/13). Additionally, the claimant often presented with no edema (Exhibits 4F/12; 6F/5, 16, 22, 28; 7F/36, 44, 51, 58, 64, 83; and l0F/3). This evidence suggests that his symptoms of pain are not as debilitating as she described.

AR 22 (emphasis added).

Generally speaking, the ALJ cited most if not all of the records Plaintiff cites and acknowledged most of the positive findings that Plaintiff underscores, including diminished strength, diminished ROM, spasms, tenderness, swelling, positive McMurray's sign, and limping gate.[5]  Where the ALJ cited an examination showing a negative finding in one respect, Plaintiff counterbalances by noting the presence of positive findings in another respect.[6]  While the ALJ

---

[5] The ALJ did not acknowledge the instances of positive Babinski's, Lachman's, or Drawer's sign, poor patella tracking, or inability to heel and toe walk.  The Court will not find harmful error where those findings are cited indiscriminately among Plaintiff's extensive list of positive findings the ALJ purportedly overlooked, when in fact the ALJ acknowledged most of the same.

[6] Even where the ALJ did not necessarily note that knee tenderness was reflected in a specific record which she cited for a different proposition (such as full motor strength), the ALJ noted that many records did show knee tenderness.  Thus, Plaintiff's "cherry picking" allegation is not accurate.

used language suggesting that the positive findings were sparse and the negative findings were numerous, Plaintiff suggests the opposite is true.  Neither characterization appears to be accurate as the positive and negative findings appear roughly on balance.  The Court need not resolve the discrepancy or tally up the raw number of positive versus negative findings within the numerous physical examinations in the record.  The unavoidable fact is that the record is replete with mixed findings on physical examination as to Plaintiff's knee and lumbar spine.  Where the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision.  *See Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997).

The ALJ did not ignore the abnormal examination findings in the record, but thoroughly covered the normal and abnormal findings alike.  The ALJ did not reject the existence of limitations attributable to Plaintiff's knee and back impairments, but included restrictions as to standing, walking and postural activities.  The ALJ did not fully embrace the limitations identified by Dr. Rush.  The ALJ's rejection of that opinion was supported by specific and legitimate reasoning.

### B.    Plaintiff's Testimony

#### 1.    Applicable Law

The ALJ is responsible for determining credibility,[7] resolving conflicts in medical testimony and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding

---

[7] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016.  Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities."  S.S.R. 16-3p at 1-2.

subjective pain or symptoms is credible.  *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir.

2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3.  First, the claimant must produce objective

medical evidence of an impairment that could reasonably be expected to produce some degree of

the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82.  If the

claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the

intensity and persistence of [the claimant's] symptoms to determine the extent to which the

symptoms limit an individual's ability to perform work-related activities."  S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and

convincing reasons.  *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p

at \*10.  Subjective pain testimony "cannot be rejected on the sole ground that it is not fully

corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in

determining the severity of claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261

F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the

claimant's representations of the intensity, persistence and limiting effects of his symptoms;

statements and other information from medical providers and other third parties; and any other

relevant evidence included in the individual's administrative record.  S.S.R. 16-3p at 5.

### 2.    Analysis

The ALJ offered the following summary of Plaintiff's pertinent testimony, the accuracy and

completeness of which is not in dispute:

> The claimant testified that she can no longer work because of pain in her lower back
> and right knee (Hearing Testimony). Additionally, the claimant testified that she can
> stand for thirty to forty minutes, sit for fifteen to twenty minutes, and walk only
> seventy-five yards before needing to change positions or pass out from pain (Id.).
> Furthermore, the claimant testified that she can only lift up to five pounds (Id.). The
> claimant stated that she can only stand for short periods of time because of swelling
> and pain in her right knee (Exhibit 6E/l). Additionally, the claimant stated that she
> is unable to lift objects correctly (Exhibit 6E/6).

AR 22.

The ALJ's pertinent reasoning for rejecting the testimony was much the same as what was discussed above, quoted here for ease of reference:

> Throughout the relevant period, the claimant consistently reported pain arising, at least in part, out of her right knee injury, degenerative disc disease, and chronic pain syndrome (Exhibits lF/2, 17; 3F/1; 4F/1 l; 5F/3, 7, 12; 6F/8, 13; 7F/35, 61, 67, 80, 86, 92; 8F/8; l lF/28; 14F/4-108; and 19F/13-95). However, the claimant's allegation of constant chronic pain are out of proportion to her typically unremarkable presentation during appointments. For example, providers frequently observed the claimant as being in no acute or apparent distress when evaluated (Exhibits lF/8, 19; 4F/12; 7F/10, 20, 51; l0F/2; llF/4, 10, 15, 20, 26, 32; 14F/5, 7, 9; and 19F/13-95). Additionally, muscle atrophy is a common side effect of prolonged or chronic pain, as it is common to not use a muscle in order to avoid pain. The claimant generally had no evidence of muscle atrophy during the relevant period *(See e.g.* Exhibits 1F-19F). For example, she generally had normal strength in her upper and lower extremities and intact reflexes (Exhibits l0F/4 and 19F/13, 29, 36, 43, 50, 55, 61, 64, 75, 79, 82, 89, 92, 95). At times, the claimant presented with a diminished range of motion and strength (Exhibits 5F/4, 8, 14; 6F/10, 16; 7F/64, 70, 83, 89, 94; l0F/4; and 14F/12-109). However, the claimant was noted as having a full range of motion during many examinations (Exhibits lF/5; 3F/4; 8F/l l; l0F/4; and 19F/13, 28, 36, 43, 50, 55, 61, 75). Additionally, the claimant occasionally presented with spasms, tenderness, and swelling in her knee and spine (Exhibits lF/8, 19; 4F/12; 6F/10; 7F/15, 25, 64, 70, 83, 89; l lF/10; 14F/49-109; and 19F/29). However, the claimant was noted as having no swelling and normal musculoskeletal examinations during many treatment sessions (Exhibits lF/5; 3F/4; 6F/5, 10, 16; 7F/30, 44, 51, 64, 83, 89; and 8F/l l). Although the claimant had positive McMurray tests, the claimant showed improvement with treatment (Exhibit 14F/49-l 09). Indeed, with treatment, the claimant generally had negative McMurray tests (Exhibits 4F/12 and 14F/12-46). Furthermore, the claimant's straight leg raise test was negative (Exhibit l0F/4). Although the claimant was occasionally observed with a limp, examining sources generally noted that the claimant had a gait within normal limits without an assistive device (Exhibits 5F/4, 8, 13; 6F/10, 64; 7F/64, 70, 83, 89; 14F/5-105; 18F/6; and 19F/13). Additionally, the claimant often presented with no edema (Exhibits 4F/12; 6F/5, 16, 22, 28; 7F/36, 44, 51, 58, 64, 83; and l0F/3). This evidence suggests that his symptoms of pain are not as debilitating as she described.
>
> The claimant also reported relief from treatment. For example, after an arthroscopy was performed on the claimant's knee, her knee impairment was noted as stable or improved during many examinations (Exhibits lF/9, 10, 20, 21 and 4F/13). The claimant's pain was also treated with medication, which the claimant reported helped improve her symptoms (Exhibits 5F/3, 7, 12, 17 and 14F/57, 61, 67, 73, 76, 80, 86). This suggests that the claimant's impairments are not as persistent as alleged.
>
> This is not to say that the claimant did not suffer from substantial medical conditions, with limitations accounted for in the residual functional capacity. The

medical imaging of the claimant's right knee from before the relevant period revealed a lateral meniscus tear (Exhibit 14F/134). However, more recent imaging was noted as normal with only early to moderate arthritis (Exhibits 2F/l, 2 and 4F/4). Additionally, the imaging of the claimant's spine revealed only mild degenerative changes in the spine (Exhibits lF/11, 13; 3F/5; and 13F/44, 46, 58, 59). The imaging of the claimant's left knee was noted as being normal (Exhibits lF/15 and 13F/45, 59). Furthermore, the claimant had a normal bilateral lower needle electromyography examination (Exhibit 14F/l l l). This suggests that the claimant's impairments are not as chronic as alleged.

The reasoning can be broken down as follows: 1) plaintiff was usually in no acute distress upon examination; 2) muscle atrophy is a common side effect of chronic pain and Plaintiff had no muscle atrophy; 3) on examination she generally or frequently had full strength, ROM, normal gate, negative McMurry's, and no swelling despite some countervailing examples; 4) the record reflects improvement following treatment; 5) more recent imaging of her knee was largely normal as was imaging of her lumbar spine.

Plaintiff disputes the sufficiency of the first and second reasons, and the Court agrees.  The presence or absence of acute distress and muscle atrophy is not particularly informative.  Normal muscle tone and bulk are often noted, but that does not appear to be the point the ALJ was making here.  Rather, the ALJ was pointing out that the record generally does not reflect the presence of atrophy.  Neither acute distress nor muscle atrophy are preconditions for a disability finding.  As examples the ALJ cited "*see, e.g.* Ex. 1F-19F," which is far from a pin citation.  That page range is in fact the entire medical file spanning over 1,000 pages.  The discussion here is neither clear or convincing.

 Plaintiff also disputes the ALJ's reasoning as to the findings on physical examination.  As discussed above, the findings on physical examination were mixed.  There was ample objective basis to reject Plaintiff's testimony as to her alleged physical limitations.  However, subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing

20 C.F.R. § 404.1529(c)(2)).  The lack of acute distress, mixed findings on examination, and the relatively unremarkable imaging and electromyography testing are all still pieces of objective medical evidence.  The ALJ did not identify any daily activities or testimonial inconsistences, for example, as bases for rejecting the testimony.

This leaves improvement following treatment as the only additional piece of evidence cited by the ALJ.  Although a claimant's pain reports are often contained in medical records which otherwise reflect objective findings, improvement in pain level is dependent upon the claimant's own report to the clinician.  In that respect it is subjective.

First, the ALJ cited an emergency department visit where Plaintiff presented with severe knee pain following a fall.  AR 443.  Subsequent examinations in the emergency department noted "course: improving" and "pain status: decreased."  AR 446.  These records are not sufficient to reject Plaintiff's pain testimony.  They reflect non-specific improvement from baseline with no quantifiable metric to measure the amount of improvement.  Moreover, the baseline was pain sufficiently severe to warrant an emergency department visit following an acute injury.  Improvement from that state is not indicative of functional capacity, nor does it undermine Plaintiff's testimony that she still experiences debilitating chronic pain.

Second, the ALJ cited pain management visits.  AR 22 (citing Ex. 5F/3, 7, 12, 17 and 14F/57, 61, 67, 73, 76, 80, 86).  As Plaintiff describes the pain management records, they note that pain is 4 to 6 out of 10 with medication, and 10 out of 10 without medication.  Br. at 17.  Plaintiff disputes the sufficiency of these records to justify the ALJ's rejection her testimony because "[i]t is axiomatic that pain medication would provide some sort of relief for chronic pain and does not qualify as clear and convincing reasoning."  Br. at 17.  It is not axiomatic that pain medication necessarily provides relief for chronic pain.  However, a 40% to 60% reduction in pain is not a trivial amount of relief.

Although persistent pain at a level of 4 to 6 out of 10 with medication is still a considerable amount of pain to deal with on a chronic basis, the RFC is not the most one can do while remaining pain free.  It is the most one can do despite one's limitations.  20 C.F.R. §§ 404.1545(a)(1).  The pain management records undermine Plaintiff's subsequent testimony that her pain was sufficiently severe that she could not lift more than 5 to 10 pounds and could not walk more than 75 yards without passing out from pain.  AR 58.

### C.   DOT Conflict

### 1.   Legal Standard

Pursuant to SSR 00-4p:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

### 2.   Analysis

Plaintiff argues that the VE's testimony conflicts with the DOT because her past relevant work as salon manager and file clerk are classified as light and light work requires standing and walking 6 of 8 hours, and the ALJ's hypothetical stated 4 hours of standing and walking.  Social Security Ruling 83-10 states that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."

Notwithstanding, the VE testified that the light jobs identified are "primarily done in the sitting position."  AR 74.  Plaintiff does not quote or reference the DOT descriptions of the

14

identified jobs, nor argue that those descriptions suggest more than 4 hours of standing and walking is required.  Plaintiff also testified that her past work as a salon manager was mostly done in a sitting position, specifically 5 hours of sitting.  AR 53.  The VE's response to the ALJ's hypothetical did not specify that the salon manager classification was as performed (versus generally performed), but Plaintiff's testimony is nonetheless notable.   The testimony undermines the contention she now makes on appeal that the VE was mistaken and that the salon manager position generally requires 6 hours of standing and walking.  The VE testified the job is primarily done from a seated position, and Plaintiff testified that her experience as a salon manager was no exception.  The ALJ had no duty to inquire further.

### D.    Completeness of the Hypothetical

#### 1.    Applicable Law

If the ALJ's hypothetical to the VE does not reflect all of the claimant's limitations, the expert's testimony has no evidentiary value to support the conclusion that the claimant can perform her past relevant work or other jobs existing in the national economy.  *See Alexander v. Saul*, 817 F. App'x 401, 404 (9th Cir. 2020).

#### 2.    Analysis

The ALJ's assessed RFC was as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can lift and/or carry twenty pounds occasionally and ten pounds frequently; can stand and/or walk for thirty minutes at a time for a total of four hours in an eight-hour workday, *but would need to be able to rest for two to three minutes off task after standing or walking thirty minutes;* can sit for one hour at a time for a total of six hours, but would need to be able to shift positions or stand up every hour for five minutes at her workstation, while remaining on task; can occasionally climb ramps, stairs, ladders, ropes or scaffolds; can frequently balance and occasionally stoop, kneel, crouch or crawl; *may be off task up to nine percent of the workday, but would not consistently be off task nine percent of every workday.*

AR 21 (emphasis added).

15

1

2

Plaintiff's argument, quoted in full, is as follows:

3

4

5

6

> The ALJ's RFC stated that Ms. Garrett would need to be able to rest for two to three minutes off task after standing or walking thirty minutes; and may be off task up to nine percent of the workday but would not consistently be off task nine percent of every workday. (AR 21). However, the ALJ's hypotheticals never included the additional nine percent off task limitation. (AR 67-72). Rather, the ALJ separately questioned the VE about an employer's tolerance for time off task, which the VE stated was up to and including 9 percent. (AR 72).

7

8

9

10

11

> An additional two to three minutes off-task every thirty minutes up to four hours results in an additional 16 to 24 minutes of time off-task above the nine percent threshold testified to by the VE. The ALJ does not specify whether the additional 16 to 24 minutes of time off-task is included in the additional nine percent in the final RFC. As a result, the ALJ's failure to pose a complete hypothetical to the VE creates an ambiguity that was not resolved by the ALJ. Therefore, the VE's testimony has no evidentiary value.

12

The relevant testimony was as follows:

13

14

15

16

17

18

19

20

21

> Q So let me ask you one final hypothetical. So we're going to assume an individual -- so I'm going to ask you to assume the same facts as in the third hypothetical where they could stand or walk 30 minutes at a time and they could sit one hour at a time, but they would need to be able to alternate let me do that differently. They could stop -- sit -- walk 30 minutes at a time -- stand or walk 30 minutes at a time and then they would need to rest two to three minutes after standing or walking 30 minutes; they can sit one hour at a time, but would need to be able to shift in their seat or stand up for five minutes after sitting for one hour, but they would remain on task during that five-minute time period; and then we'd have the other limitations of hypothetical one; they can occasionally climb ramps, stairs, ladders, ropes, or scaffolds; they can frequently balance and occasionally stoop, kneel, crouch, or crawl; and they would be standing or walking for a total of four hours and sitting a total at least six hours. So with those limitations, would there be any prior relevant work?

22

> A I'm contemplating and reviewing the criteria.

23

> Q All right.

24

25

> A Yes, Your Honor, all the prior -- all the jobs noted in
> hypothetical one can be done under this hypothetical as well.

26

> Q Okay. And what is the off-task tolerance?

27

> A Up to and including 9%

28

> Q And the absence tolerance?

16

A One day a month.

ALJ: So those are the questions I have for you. I am now going to give Mr. Pena an opportunity to ask you some questions. Counsel?

AR 72.

Plaintiff has no basis to conclude that the 9% off task limitation was an "additional limitation" to be tacked onto the 2 to 3 minutes of off task behavior every 30 minutes of sitting. The testimony does not suggest they were cumulative limitations. The fact that the ALJ posed the 9% off task question immediately following the hypothetical, and not included *within* the hypothetical, strongly suggests they were not cumulative limitations. It suggests the ALJ was clarifying the total customary off task tolerance from the identified jobs to ensure the 2 to 3 minute breaks identified in the hypothetical would not exceed such tolerance.

Defendant argues the issue was waived by counsel having not raised it at the administrative hearing. The Court need not address whether the issue was waived. The failure to raise the issue at the hearing is fatal to the argument for a different reason: there is no ambiguity to be explored on remand because, as mentioned, it is sufficiently clear that the 9% off task limitation was not to be tacked onto the 2 to 3 minute hourly breaks. That is true regardless of whether counsel could have, or should have, asked the ALJ for such clarification during the hearing.

**VI.**     <u>**Conclusion and Order**</u>

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied. The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Michelle Garrett.

IT IS SO ORDERED.

Dated:   **August 23, 2022**                    **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE